IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| KAYLA T. HELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CV-397 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons that follow, defendant's motion for summary judgment [doc. 15] will be granted, and plaintiff's "Motion" [doc. 7] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Citing back disorders, plaintiff initially applied for SSI in November 1996. After her application was denied initially and on reconsideration, plaintiff received a hearing before Administrative Law Judge Jack Williams. Judge Williams subsequently issued a written decision on May 29, 1998, concluding that plaintiff was eligible for benefits. [Tr. 41]. He found that plaintiff suffered from "severe" impairments of depression and various

post-surgery spinal conditions. [Tr. 42]. Judge Williams concluded that, *physically*, plaintiff retained the residual functional capacity ("RFC"):

> to perform work activity involving lifting 15 to 20 pounds occasionally and ten pounds frequently, with the ability to alternate sitting and standing, avoiding hazards, repetitive squatting, constant or frequent stooping and bending, high stress work, and use of the left leg for frequent repetitive movements.

[Tr. 44]. Nonetheless, based on the nonexertional limitations of "poor ability to tolerate stress and demonstrate reliability and fair to poor ability to interact with the public and coworkers," Judge Williams concluded that there were "not a significant number of jobs in the national economy which the claimant could perform." [Tr. 44-45]. His decision ends with the directive that "[t]he claimant's condition should be reviewed in one year as it is likely to improve with treatment." [Tr. 47].

Before one year had passed, however, the Commissioner terminated plaintiff's benefits due to excess income and resources. [Tr. 14].[1] After her widow's benefits ceased, plaintiff reapplied for SSI in October 2002, again on the basis of disc disease. [Tr. 14, 87, 100].[2] Her renewed application was denied initially and on reconsideration. She then requested a hearing, which took place before Administrative Law Judge William Davis (hereinafter "the ALJ") on October 27, 2004. [Tr. 273]. Plaintiff appeared at the hearing pro

---

[1] The excess income was primarily: (a) widow's benefits temporarily received following the 1998 death of her husband; and (b) "Osage Indian Monies" from the Bureau of Indian Affairs because, in plaintiff's words, "I took care of an Osage Indian." [Tr. 14, 77, 88-89, 297].

[2] Although plaintiff's renewed application continues to allege a disability onset date of March 13, 1996, she does not contest the Commissioner's position [Tr. 14] that the earliest date from which she could now receive benefits is her present application date of October 2002.

se, her attorney having withdrawn. [Tr. 35, 275].³

On January 13, 2005, the ALJ issued a decision denying benefits. Therein, he found that plaintiff suffers from "residuals of lumbar laminectomy and diskectomy, alcohol dependence, and depressive and chronic pain disorders," which are "severe" impairments but not equivalent, singularly or in concert, to any impairment listed by the Commissioner. [Tr. 16]. The ALJ found no significant improvement in plaintiff's physical condition since the date of Judge Williams's decision. [Tr. 17]. He accordingly adopted the *physical* aspects of Judge Williams's residual functional capacity findings. [Tr. 17]; *see also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). However, noting in part that plaintiff's depression was reported to have lessened since she allegedly ceased consuming "up to a half-gallon of bourbon per week and at least '3 large' drinks daily," the ALJ found that her *mental* impairments had improved since the date of the original decision. [Tr. 16-17].⁴ He accordingly concluded that plaintiff retains the residual functional capacity to perform certain "unskilled to low-level semi-skilled" light jobs existing in the national economy. [Tr. 18-19]. Plaintiff was accordingly found not to be under a disability.

---

³ In a letter to the ALJ, counsel represented that plaintiff "understands that she has the right to retain another attorney to represent her[.]" [Tr. 35]. At the beginning of the hearing, the ALJ also stressed plaintiff's right to counsel, but plaintiff stated her "desire to go forward" pro se. [Tr. 275-78]. In light of plaintiff's self-representation, the ALJ acknowledged his "heightened responsibility to the claimant with respect to the pursuit of her claim." [Tr. 13].

⁴ "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on June 17, 2005. [Tr. 4]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).[5]

II.

*Relevant Background*

Plaintiff suffered an on-the-job back injury in 1996 while carrying a five-gallon container of biscuit gravy. [Tr. 95, 244, 284]. She has since undergone two back surgeries, but continues to complain of cramping, falls, and severe pain. [Tr. 36, 72, 93, 100, 107, 112]. As a result, plaintiff states that her "whole lifestyle has stopped" and that she "can not stand for any length of time" without suffering "knife sharp pain" throughout her body. [Tr. 72, 107].

Plaintiff can still perform household chores (because "there is a lot of things to do") although reportedly at a slower pace than before her surgeries. [Tr. 296]. Plaintiff lives in a three-story renovated barn and is able to go up and down "a huge set of stairs." [Tr. 295-96]. She remains able to "prepare an exquisite meal for her family and friends." [Tr. 251]. Plaintiff can grocery shop and visit others. [Tr. 298, 302]. On at least one occasion in 2003, she traveled to a three-day motorcycle rally where she was able to stand in the rain

---

[5] Since her administrative hearing, plaintiff has retained a new attorney and remains represented by counsel on appeal.

and mud to listen to a heavy metal concert. [Tr. 299-301].[6]

Plaintiff has had prescription pain medication available to her since 1996. [Tr. 98, 106, 188, 210, 234]. Nonetheless, to "just take the edge off the pain," plaintiff consumed during the relevant time period at least one-half gallon of bourbon per week but denies that this conduct in any way affected her ability to work. [Tr. 250, 290-92].[7] Lastly, despite claims of frequent falling, which she attributes to her right leg "giving out" on her, plaintiff uses no cane or other assistive device. [Tr. 112, 210, 212].

III.

*Medical Evidence*

A. <u>Evidence Presented to the ALJ</u>

Dr. David Hauge performed an L4-5 discectomy in July 1996. [Tr. 127-28]. Citing MRI results and plaintiff's complaints of continuing significant right L5 radiculopathy, Dr. Hauge performed a second L4-5 surgery in September 1998. [Tr. 132-33]. Following surgery, Dr. Hauge noted that plaintiff had "absolutely normal strength" except

---

[6] This example of plaintiff's activity level came to light only because she sought medical treatment after being struck in the mouth with a drink bottle during an altercation at the concert. [Tr. 227]. Her attendance at the concert and rally stands in stark contrast to her alleged limitations. At the administrative hearing, the ALJ offered plaintiff ample opportunity to explain this discrepancy. [Tr. 298-302]. She failed to do so in any meaningful way, offering only that "That heavy metal stuff is not me. . . . I am Conway Twitty," or, alternatively, that her friends know she enjoys such events and thus "they get me out there." [Tr. 300, 302]. Plaintiff's friend Stephanie "Dixie" Mays, who also appeared at the hearing, testified that plaintiff "did no walking all weekend" during the rally. [Tr. 301]. In light of plaintiff's admission that she stood throughout the "heavy metal" concert, the court considers Ms. Mays's testimony to be less than credible.

[7] Plaintiff used alcohol since at least 1996 [Tr. 127], but testified that she stopped drinking one month prior to the administrative hearing. [Tr. 293].

for "significant persistent weakness" of the right extensor hallucis longus ("EHL"). [Tr. 206].[8]

Plaintiff was provided with a walker for use in her recovery from the second surgery. [Tr. 133, 206]. By October 1998, plaintiff had graduated to walking slowly with a cane. [Tr. 204].

By November 1998, Dr. Hauge commented that plaintiff had "undoubtedly made dramatic improvement." [Tr. 203]. In December 1998, Dr. Hauge again noted "dramatic" and "distinct" improvement. [Tr. 202]. Plaintiff stated that she was only using her cane "when she is out walking around in the community. She does not need it around the house anymore." [Tr. 202]. Dr. Hauge was "very pleased with how she is doing." [Tr. 202].

In February 1999, Dr. Hauge opined that plaintiff had reached maximum medical improvement. [Tr. 201]. He assigned a fifteen percent impairment relative to the second surgery and the residual right L5 radiculopathy. [Tr. 201]. Vocationally, treating surgeon Hauge stated that

> I would recommend that she function at essentially the sedentary to light physical demand level with a maximum lifting of 20 pounds occasional basis. I prefer her to keep her lifting limit to no more than 10-15 pounds if at all possible. I have advised her to avoid any type of repetitive bending. She needs to have the opportunity to change positions frequently. *Her walking appears to be unrestricted in that she can walk about one mile at a time.* I would probably advise against any type of work with long distance driving.

---

[8] Dr. Hauge continued to note significant right EHL weakness as an exception to plaintiff's generally full motor strength. [Tr. 191, 196, 198, 202, 204, 205].

[Tr. 201] (emphasis added). Dr. Hauge generated this opinion despite plaintiff's contemporary claims of right leg instability and "some muscular cramping[.]" [Tr. 200].

In September 1999, plaintiff continued to report some cramping with increased activity, and "some persistent difficulty with the right foot turning in and giving away from her." [Tr. 198]. Nonetheless, plaintiff reported that both her walking and her right L5 radiculopathy had improved. [Tr. 198].

Dr. Hauge's December 1999 office notes contain the following inconsistent entry: "She reports that she continues to have significant cramping in the right leg . . . . She reports she has had several falls. On the other hand, she reports that her walking has done quite well." [Tr. 196].[9] A January 2000 MRI revealed some residual L4-5 bulging and an L5-S1 disc protrusion. [Tr. 195]. In September 2000, plaintiff advised Dr. Hauge that "she is tolerating her days fairly well, and can control her leg pretty good with regard to the spasms, and turning into the right ankle." [Tr. 191].

In January 2001, plaintiff visited Dr. Hauge complaining of increased back pain secondary to a fall in her home six weeks prior. [Tr. 190]. On January 19, 2001, Dr. Hauge reviewed a repeat MRI which showed some progressive loss of height at the L4-5 disc. [Tr. 189]. Plaintiff cancelled her appointment that day due to trip to Florida. [Tr. 189]. Dr. Hauge "assum[ed] that since the patient has decided to take a trip to Florida her symptoms

---

[9] A nurse practitioner associated with treating physician Edward Wear also noted a reported fall, in May 1998, in which plaintiff hit her hand "against some unknown object." [Tr. 236]. In August 1999, Dr. Wear's office recorded plaintiff's complaint of "frequent falls." [Tr. 233].

7

have improved." [Tr. 189]. At an appointment two weeks later, Dr. Hauge noted that "I have advised her I want her to gradually increase her activities. I don't really feel I have anything else to offer her from a surgical standpoint." [Tr. 188]. Dr. Hauge gave plaintiff "prescriptions for Demerol, Soma and Lodine for discomfort." [Tr. 188].

Dr. Jeffrey Summers performed a consultative examination in January 2003. Plaintiff reported that "[a]ctivities involving bending, stooping, and lifting greater than 20 lbs as well as sitting, standing, or walking for greater than 30 minutes worsen her back pain." [Tr. 210]. Plaintiff admitted only "occasional" alcohol use and stated that "[f]or relief of her symptoms, she will utilize pain medications and muscle relaxers." [Tr. 210]. Dr. Summers noted that "[s]he utilizes the assistance of no external orthotic device." [Tr. 210, 212]. MRIs showed moderate narrowing at L4-5 and L5-S1, along with mild reactive sclerosis and mild to moderate degenerative changes. [Tr. 213]. Dr. Summers concluded that

> On her exam today, she has a pronounced decrease in range of motion at her lumbar spine. She has a limping antalgic gait. Based on these findings, it is reasonable to expect that she will have difficulty with bending, stooping, and lifting greater than 20 lbs as well as sitting, standing, or walking for greater than 30 minutes or more than 6 hours total in a single workday. Her condition is not expected to improve. She does retain the unrestricted use of both upper extremities.

[Tr. 212].

Dr. Robin Richard then performed a February 2003 RFC Assessment. Dr. Richard's conclusions were consistent with the original physical RFC findings by ALJ Williams. [Tr. 44, 216-20].

8

At plaintiff's request, counselor Jeff Snell, M.S., submitted a 2004 evaluation. [Tr. 249-50]. Mr. Snell diagnosed major depression and alcohol abuse. According to the evaluation, plaintiff "reports drinking up to ½ gallon of bourbon a week with at least 3 large drinks a day to help her sleep and decrease her pain . . . and to medicate her depression." [Tr. 250]. Also at plaintiff's request, Dr. Cleve Miller of "Tennessee Drug & Alcohol" submitted a 2004 "To Whom It May Concern" evaluation. [Tr. 251]. No treatment relationship is referenced in the evaluation. Dr. Miller noted "intense" depression and a "significant" six-year history of drug and alcohol abuse. [Tr. 251]. Neither Dr. Miller nor counselor Snell offered any specific vocational opinions.

Lastly, neuropsychiatrist Edward Workman evaluated plaintiff in early September 2004. Dr. Workman noted that "she reports drinking alcohol heavily at the level of 5-6 whiskey drinks per night in order to 'take the edge of pain' [sic]." [Tr. 263]. On examination, Dr. Workman found "multiple active lumbar trigger points . . . consistent with myofascial and inflammatory pain components." [Tr. 264]. In Dr. Workman's opinion, personality testing showed no evidence of malingering. [Tr. 264]. He diagnosed mixed pain disorder, mixed personality disorder, depression, and pain-induced alcohol dependence. [Tr. 264]. Immediate alcohol detoxification was recommended. [Tr. 264-65].

Plaintiff continued in a treatment relationship with Dr. Workman. At the end of September 2004, plaintiff reported that she had consumed no alcohol since the initial evaluation earlier that month. [Tr. 252]. Regarding this fact, Dr. Workman wrote that

9

"[p]atient remains depressed, *but less so* as we are gaining control of her pain and *she has stopped using ETOH*[.]" [Tr. 252] (emphasis added).

B. Evidence Submitted with the Present Appeal

Plaintiff has provided additional medical records to the court. [Docs. 8, 17]. She did not present any of these documents to either the ALJ or the Appeals Council. [Tr. 4-6]. Primarily, the records evidence continuing treatment by Dr. Workman from 2004 through 2006.

Also included is an affidavit from Dr. Workman. Therein, he restates that plaintiff suffers from back-related pain, opining that "this disability prevents Ms. Held from returning to any gainful employment." [Doc. 8]. Dr. Workman further states that "[w]hen I first met Ms. Held, she suffered from alcohol dependence which she had been using for pain control because she had fallen through the cracks of the workers compensation bureaucracy, and she was unable to obtain appropriate medication and medical treatment."

The newly-submitted treatment records of Dr. Workman evidence that plaintiff's pain and mood are improving to some degree with treatment. The records also offer further evidence of this case's gaping chasm between physician findings and plaintiff's self-reports. For example, Dr. Workman's August 8, 2005 notes read in material part:

> Patient's mood remains clearly improved on SSRI therapy; confirmed by the Symptom Questionnaire . . . . However, the patient rated her irritability, anger and depression due to pain as a 10 on a scale of 0/10.

Dr. Workman's records also reference plaintiff's continued representations that she is no longer consuming alcohol, although she did on one occasion test positive for cocaine. Plaintiff's explanation was "that someone may have put such an agent in her drink at her birthday party the evening prior to the urine drug screen."[10]

Plaintiff has also submitted May 2005 records from Dr. Wear. These records indicate that plaintiff had recently fallen. Similarly, in March 2006, Dr. Workman noted that plaintiff recently "slipped on stairs and fell[.]"

IV.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).

---

[10] Unfortunately, a follow-up drug screening was not conducted. Plaintiff refused, "insist[ing] that she had a court appearance over 'property.'" [Doc. 8] (emphasis in original).

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520 (1997)). Plaintiffs bear the burden of proof at the first four steps. *See Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

V.

*Analysis*

The following issues can be discerned from plaintiff's motion and briefs:

1. The newly-submitted evidence warrants reversal or remand pursuant to sentence six of 42 U.S.C. § 405(g).

2. The ALJ breached his heightened duty to develop the record in light of plaintiff's pro se status.

The court will address these contentions in turn.

A. Sentence Six

A district court can remand a Social Security appeal for consideration of additional evidence, but only if the claimant satisfies each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). Sentence six mandates that, before a claim will be remanded for consideration of additional evidence: (1) there must be new evidence presented; (2) the evidence must be material; and (3) there must be good cause for the failure to present it at the hearing level. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The claimant bears the burden of proof. *Id.*

Because plaintiff has failed to demonstrate that her new evidence is "material," the request for sentence six remand must be denied. To show materiality, a claimant must demonstrate a "reasonable probability" that the ALJ would have reached a different decision if presented with the new evidence. *Sizemore,* 865 F.2d at 711. Cumulative evidence is not "material." *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990).

Plaintiff's new evidence is mostly from Dr. Workman. Therein, Dr. Workman restates his opinion that plaintiff suffers from disabling back-related pain. He also restates the opinion that plaintiff's extraordinary alcohol consumption was necessary "for pain control because she . . . was unable to obtain appropriate medication and medical treatment."

Plaintiff's back injury, and her secondary complaints of pain, cramping, and falling, were considered by treating surgeon Dr. Hauge. [Tr. 200]. As noted by the ALJ, Dr. Hauge nonetheless opined that plaintiff can work. [Tr. 15, 201]. The ALJ considered the differing views of treating sources Hauge and Workman. The substantial evidence standard of review grants the ALJ "a zone of choice" within which he can weigh conflicting evidence. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Weighing the opinions in this case, the ALJ within his discretion found Dr. Hauge's opinion to be more consistent with the record as a whole. Plaintiff has not shown a "reasonable probability" why her cumulative documentation from Dr. Workman would cause the ALJ to change his mind. Again, cumulative evidence is not "material." *Young*, 925 F.2d at 149.[11]

---

[11] In the alternative, to the extent that plaintiff would argue that her new evidence is material
(continued...)

Plaintiff's new evidence documenting a fall in May 2005 and in March 2006 is also cumulative. To the extent that these records can be read to connect either fall with plaintiff's purported back symptoms, treating surgeon Hauge considered "[h]er main complaint [of] difficulty with her right leg being 'unstable' when she walks and this is probably due to residual right L5 radicular syndrome." [Tr. 200]. Nonetheless, that same date, Dr. Hauge opined that plaintiff can work despite her claims of occasional falls. [Tr. 201]. In light of Dr. Hauge's opinion, plaintiff again has not shown that her new evidence (of two further falls of unknown cause) generate a "reasonable probability" that the ALJ would have changed his mind as to the severity of this alleged condition. This is further true since, as noted by the ALJ [Tr. 15], plaintiff does not use a cane or any other assistive walking device as would be expected of a claimant who suffers from disabling leg instability.

The court further finds immaterial Dr. Workman's assertion that plaintiff needed one-half gallon of bourbon per week "for pain control because . . . she was unable to obtain appropriate medication[.]"[12] First, without regard to underlying cause, "[a]n

---

[11](...continued)
because Dr. Workman now more clearly states his "opinion that Ms. Held is unable to engage in any substantial gainful activity," plaintiff fails to explain why such evidence was not timely submitted to the Commissioner. Thus, even if Dr. Workman's new opinion evidence were deemed "material," plaintiff nonetheless fails to meet sentence six's "good cause" requirement.

[12] Plaintiff's brief echoes Dr. Workman's attempted justification, arguing that "[i]t is unconscionable that someone with a serious injury is deprived of legitimate disability benefits because she has been *required* to depend on alcohol instead of medical treatment and medication for pain relief." [Doc. 8] (emphasis added)).

individual shall not be considered to be disabled . . . if alcoholism . . . would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). As correctly noted by the ALJ, "it is noteworthy that recent (and brief) abstinence from such consumption brought a concomitant improvement in her depression, according to Dr. Workman." [Tr. 18]. Substantial evidence supports the ALJ's conclusion that alcoholism was a contributing factor to plaintiff's purported disability, Dr. Workman's additional commentary regarding "the workers compensation bureaucracy" notwithstanding.[13]

Lastly, to the extent that plaintiff's new evidence suggests that her back condition is worsening, "[e]vidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). If in fact plaintiff's condition has deteriorated, the appropriate course of action would be to file a new claim for benefits relative to the date that she can meet her burden of proof. *Id.*

## B. Heightened Burden Regarding Pro Se Claimants

Plaintiff contends that, because she was not represented by an attorney at her administrative hearing, the ALJ was under (and breached) a heightened duty to develop the

---

[13] Further, even if relevant, the "pain control" excuse rings hollow. In forms completed in conjunction with the present application, plaintiff acknowledged that she has had prescription pain medication available to her since 1996. [Tr. 98, 106]. This fact is further confirmed in the medical records of Dr. Hauge [Tr. 188], Dr. Wear [Tr. 234], and Dr. Summers. [Tr. 210].

record. Certainly, an ALJ may be under a special duty to more fully develop the record in cases where a claimant is not represented by an attorney. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). "There are a few special circumstances - when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures - where the ALJ has a special duty to develop the record." *Lambdin v. Comm'r, Soc. Sec. Admin.*, 62 F. App'x 623, 625 (6th Cir. 2003). However, "[w]hile the absence of counsel might cause us to scrutinize the record with care, it alone is not a grounds for reversal or remand." *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981).

Primarily, plaintiff cites the following erroneous statement contained in the ALJ's decision: "The claimant testified that she fell frequently, but the only report to a treating medical source of any falls was her January 2001 report of falling some 6 weeks prior to the visit." [Tr. 18]. The record before the ALJ actually contains *two*, rather than one, such reports by plaintiff to a physician (Hauge and Wear). The factual narrative of the ALJ's decision in fact notes both reports [Tr. 15], but for some reason his subsequent analysis does not.

The court does not consider the ALJ's misstatement to be a breach of his heightened duty to develop the record. The ALJ's factual narrative makes clear that he considered both reports. He further considered: (a) Dr. Hauge's opinion that plaintiff can work despite her claims of occasional falls; and (b) the fact that plaintiff does not use a cane

17

or any other assistive walking device. The ALJ's misstatement accordingly did not result in "clear prejudice or unfairness" such as to warrant remand. *See Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971).

Further, remand for the correction of the ALJ's procedural misstatement would be a waste of resources. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

In conclusion, "[t]he main thrust of plaintiff's argument[s] can be summarized in one sentence: '[S]ubstantial evidence contradicts the [Commissioner's] findings . . ..' While this may indeed be true, it is also true that substantial evidence supports the [Commissioner's] finding[s]." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). Given the applicable standard of review, the final decision of the Commissioner must be affirmed. *See id*.

An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge